1  ANDREW R. MUEHLBAUER, ESQ.
   Nevada Bar No. 10161
2  **MUEHLBAUER LAW OFFICE, LTD.**
   7915 West Sahara Ave., Suite 104
3  Las Vegas, Nevada 89117
   Tel:   702.330.4505
4  Fax:   702.825.0141
   Email: andrew@mlolegal.com
5
   *Counsel for Plaintiff*
6
   [Additional Counsel on Signature Page]
7

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| MANJAN CHOWDHURY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAYAGS, INC., DAVID LOPEZ, and KIMO AKIONA,<br><br>Defendants. | Case No. 2:20-cv-01209<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Manjan Chowdhury ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by PlayAGS, Inc. ("PlayAGS" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by PlayAGS; and (c) review of other publicly available information concerning PlayAGS.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired PlayAGS securities between August 2, 2018 and August 7, 2019, inclusive (the "Class Period"), seeking to pursue claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. PlayAGS is a designer and supplier of electronic gaming machines. It operates with three business segments: (i) electronic gaming machines ("EGM"), which comprises 95% of the Company's revenue and provides 380 game titles on EGM cabinets; (ii) table products, including live felt table games, side bet offerings, progressives, signage, and other ancillary table game equipment; and (iii) interactive, which offers social casino games including online versions of the Company's game titles.

3. On August 7, 2019, PlayAGS reported a net loss of $7.6 million for second quarter 2019, which included a $3.5 million impairment to goodwill and $1.3 million impairment to intangible assets of the Company's iGaming reporting unit, due to extended regulatory timelines which delayed revenues.

4. On this news, the Company's share price fell $8.99, or nearly 52%, to close at $8.31 per share on August 8, 2019, on unusually heavy trading volume.

5. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business,

operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that PlayAGS was experiencing challenges in its business in Oklahoma; (2) that, as a result, the Company's recurring revenue would be negatively impacted; (3) that PlayAGS was experiencing challenges in its Interactive business segment, including delays in securing regulatory approvals and relevant licenses; (4) that, as a result of the foregoing, PlayAGS was reasonably likely to record a goodwill impairment; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

10. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

# PARTIES

11. Plaintiff Manjan Chowdhury, as set forth in the accompanying certification, incorporated by reference herein, purchased or otherwise acquired PlayAGS securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12. Defendant PlayAGS is incorporated under the laws of Nevada with its principal executive offices located in Las Vegas, Nevada. PlayAGS's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "AGS."

13. Defendant David Lopez ("Lopez") was, at all relevant times, the Chief Executive Officer and a Director of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

14. Defendant Kimo Akiona ("Akiona") was, at all relevant times, the Chief Financial Officer ("CFO") of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

15. Defendants Lopez and Akiona (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

**SUBSTANTIVE ALLEGATIONS**

**Background**

16.  PlayAGS is a designer and supplier of electronic gaming machines. It operates with three business segments: (i) electronic gaming machines ("EGM"), which comprises 95% of the Company's revenue and provides 380 game titles on EGM cabinets; (ii) table products, including live felt table games, side bet offerings, progressives, signage, and other ancillary table game equipment; and (iii) interactive, which offers social casino games including online versions of the Company's game titles.

**Materially False and Misleading
Statements Issued During the Class Period**

17.  The Class Period begins on August 2, 2018. On that day, PlayAGS announced its second quarter 2018 financial results in a press release, reporting a 45% increase in total revenue over the prior year period to $72.8 million "driven by continued growth of our EGMs in the Class III marketplace, led by demand for our premium Orion Portrait cabinet." The Company also increased its guidance. The press release stated, in relevant part:

**Second Quarter Financial Highlights**

- Total revenue increased 45% to $72.8 million, a company record, driven by continued growth of our EGMs in the Class III marketplace, led by demand for our premium Orion Portrait cabinet.

- Recurring revenue grew to $52.6 million or 26% year-over-year. In addition to the contribution from the EGMs purchased from Rocket Gaming and Table Products purchased from In Bet in the Fall of 2017, the increase was driven by our strong Domestic revenue per day ("RPD") of $27.79, up $1.90 year-over-year.

- EGM equipment sales increased 144% to $20.2 million, another Company record, due to the sale of 1,058 units, of which approximately 60% and 12% were Orion Portrait and Orion Slant cabinets, respectively.

- Net loss improved to $5.3 million from $20.1 million in the prior year, primarily due to increased revenue described above.

\*   \*   \*

**2018 Outlook**

Based on our year-to-date progress and due to our current momentum, we now expect our total Adjusted EBITDA in 2018 to be between $132.0 and $136.0 million. This is an upward revision to the guidance we previously released and is based on greater

> visibility that we now have for the installation and performance of Orion Portrait, Orion Slant, STAX, and other products for the remainder of the year, in addition to accelerated efforts to increase our footprint in sizable new markets, such as Canada. We maintain our capital expenditures range of $55.0 to $60.0 million.

18. The same day, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2018, affirming the previously reported financial results. Regarding goodwill related to the Gameiom acquisition, the report stated, in relevant part:

> During the quarter ended June 30, 2018, the Company acquired all of the equity of Gameiom Technologies Limited (formerly known as "Gameiom", currently known as "AGS iGaming"). AGS iGaming is a licensed Gaming aggregator and content provider for real-money gaming ("RMG") and sportsbetting partners. The acquisition was accounted for as an acquisition of a business and the assets acquired and liabilities assumed were measured based on our preliminary estimates of their fair values at the acquisition date. The estimated fair values of assets acquired and liabilities assumed and resulting goodwill are subject to adjustment as we finalize our fair value analysis. The significant items for which a final fair value has not been determined as of the filing of this report include the fair value of intangible assets. We expect to complete our fair value determinations no later than one year from the acquisition date.
>
> We attribute the goodwill acquired to our ability utilize AGS iGaming's existing RMG platform to distribute our existing EGM game content into many markets, diversification of our Interactive segment's product portfolio that now includes a real-money gaming solution and other strategic benefits. Total consideration of $5.0 million included cash paid of $4.5 million and $0.5 million of deferred consideration that is payable within 18 months of the acquisition date. The consideration was allocated primarily to goodwill that is not tax deductible for $3.1 million and intangible assets of $2.7 million, which will be amortized over a weighted average period of approximately 6.6 years.
>
> The intangible assets consist primarily of customer relationships and a technology platform.

19. On November 8, 2018, PlayAGS announced its third quarter 2018 financial results, reporting that total revenue had increased 34% over the prior year to $75.5 million "driven by continued growth of our EGMs in the Class III marketplace, including entry into Alberta, Canada as well as a large sale to a long-standing tribal customer." Again, the Company increased its guidance. The press release stated, in relevant part:

> **Third Quarter Financial Highlights**
>
> - Total revenue increased 34% to $75.5 million, a Company record, driven by continued growth of our EGMs in the Class III marketplace, including entry into Alberta, Canada as well as a large sale to a long-standing tribal customer.
>
> - Recurring revenue grew to $50.7 million, or 18% year-over-year. In addition to the contribution from the EGMs purchased from Rocket Gaming, the increase

CLASS ACTION COMPLAINT
5

was driven by our strong domestic revenue per day ("RPD") of $27.14, up $1.70 year-over-year as well as increases in Table Products revenue driven by an increase in Table Product units.

- EGM equipment sales increased 82% to $24.7 million, another Company record, due to the sale of 1,332 units, of which approximately 24% were sold in Canada and 276 units were sold to a long-standing tribal customer.

- Net income improved to $4.3 million from a net loss of $4.1 million in the prior year period, primarily due to the increased revenue described above.

\* \* \*

**2018 Outlook**

Based on our year-to-date progress and due to our current momentum, we now expect our total Adjusted EBITDA in 2018 to be between $134.0 and $136.0 million. This is an upward revision to the guidance we previously released and is based on our progress executing against our many growth initiatives in the first half of the year and due to our improved visibility for the remainder of the year.

20. The same day, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2018, affirming the previously reported financial results.

21. On March 5, 2019, PlayAGS announced its fourth quarter and full year 2018 financial results in a press release that stated, in relevant part:

**Fourth Quarter 2018 Financial Highlights**

- Total revenue increased 25% to $72.1 million, driven by continued growth in our EGM segment in the Class III marketplace, primarily in early-entry markets such as Ontario, Mississippi and Nevada as well as continued penetration into ramping markets such as California and Florida.

- EGM equipment sales increased 86% to $23.2 million, due to the sale of 1,159 units, of which nearly 60% were sold into early-entry markets.

- Gaming operations revenue, or recurring revenue, grew to $48.9 million, or 8% year-over-year, driven by EGMs purchased from Rocket Gaming, increased domestic revenue per day ("RPD") of $26.41, growth and performance of our international installed base, and an increase in Table Products revenue.

- Net loss of $10.3 million increased year-over-year from a net loss of $8.5 million. Fourth quarter 2018 net loss includes a non-cash, pre-tax impairment of goodwill of $4.8 million related to our social gaming business within our Interactive Social reporting unit.

- This goodwill related to our acquisition of RocketPlay in 2015. The impairment charge was recorded within write downs and other charges in our consolidated statements of operations and comprehensive loss.

- Total Adjusted EBITDA (non-GAAP)(2) increased to $31.5 million, or 19%, driven by the significant increase in revenue, partially offset by increased

> operating expenses primarily due to headcount related costs in SG&A and R&D. Included in that amount was approximately $1.0 million of operating costs from our real-money gaming ("RMG") content-aggregator Gameiom.

> \*   \*   \*

> **2019 Outlook**

> We expect to generate total Adjusted EBITDA(4) of $160.0 - $164.0 million in 2019, representing growth of approximately 17% - 20% compared to 2018.

> We further expect 2019 capital expenditures to be in the range of $65.0 - $69.0 million, compared to $66.2 million in 2018, reflecting an expectation for a continued increase in our installed base in both existing and new markets as well as our ongoing yield optimization initiative, which includes units recently purchased from Integrity.

22.    The same day, PlayAGS filed its annual report on Form 10-K with the SEC for the period ended December 31, 2018 (the "2018 10-K"), affirming the previously reported financial results, which was signed by defendants Lopez and Akiona.

23.    On May 8, 2019, PlayAGS announced its first quarter 2019 financial results in a press release that stated, in relevant part:

> **First Quarter 2019 Financial Results**
>
> - Total revenue increased 13% to $73.0 million, driven by continued growth in our EGM segment, primarily sold units in early-entry markets such as Michigan, Saskatchewan, Pennsylvania and Massachusetts, as well as continued penetration into ramping markets such as Florida and California in addition to the contribution of leased EGMs acquired from Integrity Gaming Corp. ("Integrity") in February 2019.
>
> - EGM equipment sales revenue increased 33% to $20.2 million, driven by the sale of 1,024 units, of which nearly 55% were sold into early-entry markets.
>
> - Record gaming operations revenue, or recurring revenue, grew to $52.9 million, or 7% year-over-year, driven by the acquisition of Integrity, growth and performance of our international installed base, and an increase in Table Products revenue.
>
> - Net loss attributable to PlayAGS, Inc. of $0.1 million improved year-over-year from a net loss of $9.5 million.
>
> - Total Adjusted EBITDA (non-GAAP)(1) increased to $36.3 million, or 5%, driven by the increase in revenue, offset by increased adjusted operating expenses, primarily due to headcount related costs in SG&A and R&D as well as an additional $1.0 million of operating costs from iGaming.

24.    The same day, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2019, affirming the previously reported financial results.

25. The above statements identified in ¶¶ 17-24 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that PlayAGS was experiencing challenges in its business in Oklahoma; (2) that, as a result, the Company's recurring revenue would be negatively impacted; (3) that PlayAGS was experiencing challenges in its Interactive business segment, including delays in securing regulatory approvals and relevant licenses; (4) that, as a result of the foregoing, PlayAGS was reasonably likely to record a goodwill impairment; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

## The Truth Begins to Emerge

26. On August 7, 2019, PlayAGS reported a net loss of $7.6 million for second quarter 2019, which included a $3.5 million impairment to goodwill and $1.3 million impairment to intangible assets of the Company's iGaming reporting unit, due to extended regulatory timelines which delayed revenues. The Company also lowered its fiscal 2019 guidance. Specifically, the Company issued a press release, stating in relevant part:

**Second Quarter 2019 Financial Highlights**

- Total revenue increased 2% to $74.5 million, driven by record gaming operations revenue, or recurring revenue, from increases in our EGM and Table Products segments, as well EGM sales revenue.

- Gaming operations revenue, or recurring revenue, grew to $53.6 million, or 2% year-over-year, driven by EGMs purchased from Integrity Gaming Corp. ("Integrity"), growth of our international installed base, and an increase in Table Products revenue.

- EGM sold units increased 12% to 1,181 compared to 1,058 in the prior year, led by sales of the *Orion Portrait*$^{SM}$ and *Orion Slant*$^{SM}$ cabinets in markets such as Florida, Alabama, California, Nevada, and Mexico.

- Table Products revenue increased 35% to $2.4 million, driven by increased progressive table game and side bet placements.

\*   \*   \*

**2019 Outlook**

> Based on our year to date progress, we are revising our annual adjusted EBITDA guidance. We now expect to generate total adjusted EBITDA of $145 - $150 million in 2019, representing growth of approximately 6% - 10% compared to the prior year period. The change is due to several factors, including: (1) decreased gaming operations revenue in our EGM segment, largely due to product underperformance in Oklahoma, (2) decreased gaming operations revenue in our Interactive segment caused by delayed entry into New Jersey, as well as select markets in Europe and Latin America, and (3) decreased sales revenue from our EGM segment due to anticipated softness from certain corporate customers. We continue to expect 2019 capital expenditures to be in the range of $65 - $69 million, compared to $66.2 million in 2018, reflecting an expectation for an increase in our EGM installed base in existing markets.

27.     On this news, the Company's share price fell $8.99, or nearly 52%, to close at $8.31 per share on August 8, 2019, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired PlayAGS securities between August 2, 2018 and August 7, 2019, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

29.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, PlayAGS's common shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of PlayAGS common stock were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by PlayAGS or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

31. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

32. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of PlayAGS; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

33. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## **UNDISCLOSED ADVERSE FACTS**

34. The market for PlayAGS's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, PlayAGS's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired PlayAGS's securities relying upon the integrity of the market price of the Company's securities and market information relating to PlayAGS, and have been damaged thereby.

35.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of PlayAGS's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about PlayAGS's business, operations, and prospects as alleged herein.

36.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about PlayAGS's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## **LOSS CAUSATION**

37.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

38.     During the Class Period, Plaintiff and the Class purchased PlayAGS's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## **SCIENTER ALLEGATIONS**

39.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were

materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding PlayAGS, their control over, and/or receipt and/or modification of PlayAGS's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning PlayAGS, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

40. The market for PlayAGS's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, PlayAGS's securities traded at artificially inflated prices during the Class Period.  On August 31, 2018, the Company's share price closed at a Class Period high of $32.04 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of PlayAGS's securities and market information relating to PlayAGS, and have been damaged thereby.

41. During the Class Period, the artificial inflation of PlayAGS's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about PlayAGS's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of PlayAGS and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

42. At all relevant times, the market for PlayAGS's securities was an efficient market for the following reasons, among others:

(a) PlayAGS shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, PlayAGS filed periodic public reports with the SEC and/or the NYSE;

(c) PlayAGS regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) PlayAGS was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

43. As a result of the foregoing, the market for PlayAGS's securities promptly digested current information regarding PlayAGS from all publicly available sources and reflected such information in PlayAGS's share price. Under these circumstances, all purchasers of PlayAGS's securities during the Class Period suffered similar injury through their purchase of PlayAGS's securities at artificially inflated prices and a presumption of reliance applies.

44. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of

the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

**NO SAFE HARBOR**

45. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of PlayAGS who knew that the statement was false when made.

**FIRST CLAIM**

**Violation of Section 10(b) of The Exchange Act
and Rule 10b-5 Promulgated Thereunder
(Against All Defendants)**

46. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

47. During the Class Period, the Company and the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase PlayAGS's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Company and the Individual Defendants, and each of them, took the actions set forth herein.

48.     The Company and the Individual Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for PlayAGS's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  The Company and the Individual Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

49.     The Company and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about PlayAGS's financial well-being and prospects, as specified herein.

50.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of PlayAGS's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about PlayAGS  and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

51.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other

defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

52. The Company and the Individual Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing PlayAGS's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by the Company and the Individual Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, these defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

53. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of PlayAGS's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Company and the Individual Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by the Company and the Individual Defendants, but not disclosed in public statements by these defendants during the Class Period, Plaintiff and the other members of the Class acquired PlayAGS's securities during the Class Period at artificially high prices and were damaged thereby.

54. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that PlayAGS was experiencing, which were not disclosed by the Company and the Individual Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their PlayAGS securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

55. By virtue of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

56. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

**Violation of Section 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

57. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

58. The Individual Defendants acted as controlling persons of PlayAGS within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were

issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

60. As set forth above, PlayAGS and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

| | |
|---|---|
| 1  Dated: June 25, 2020 | By:   /s/ Andrew R. Muehlbauer   |
|   | ANDREW R. MUEHLBAUER, ESQ. |
| 2 | Nevada Bar No. 10161 |
|   | **MUEHLBAUER LAW OFFICE, LTD.** |
| 3 | 7915 West Sahara Ave., Suite 104 |
|   | Las Vegas, Nevada 89117 |
| 4 | Tel:     702.330.4505 |
|   | Fax:    702.825.0141 |
| 5 | Email: andrew@mlolegal.com |
| 6 | **GLANCY PRONGAY & MURRAY LLP** |
|   | Robert V. Prongay |
| 7 | Charles H. Linehan |
|   | Pavithra Rajesh |
| 8 | 1925 Century Park East, Suite 2100 |
|   | Los Angeles, CA 90067 |
| 9 | Telephone: (310) 201-9150 |
|   | Facsimile: (310) 201-9160 |
| 10 | |
|   | *Counsel for Plaintiff Manjan Chowdhury* |

(Lines 11–28 blank)