UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

IN RE AGS, INC. SECURITIES LITIGATION,

Case No. 2:20-CV-1209 JCM (NJK)

ORDER

This is a consolidated class action lawsuit alleging various violations of the Securities Exchange Act of 1934 ("Exchange Act") and the Securities Act of 1933 ("Securities Act") against twenty-eight defendants. Presently before the court are three motions to dismiss the second amended complaint filed by three separate groups of defendants. (ECF Nos. 69, 70, 71). The plaintiff class, through lead plaintiff Oklahoma Police Pension and Retirement System ("lead plaintiff"), filed responses. (ECF Nos. 78, 79, 80). The groups of defendants replied. (ECF Nos. 83, 84, 85).

I.  INTRODUCTION

This matter arises from allegedly fraudulent misrepresentations regarding defendants' statements regarding PlayAGS, Inc. ("PlayAGS")'s economic performance. The plaintiff class contends these statements were part of a fraudulent scheme to inflate the price of PlayAGS's initial public offering ("IPO") and subsequent secondary public offerings ("SPOs"). Specifically, the alleged harm resulted from statements artificially inflating the share price in advance of two SPOs: one in August 2018 (the "August 2018 SPO") and another in March 2019 (the "March 2019 SPO"). The plaintiff class consists of any person or entity who purchased PlayAGS stock from January 26, 2018, to March 4, 2020 (the "class period"). During the class period, PlayAGS stock fell from a high of $32.04 per share in 2018 to a low of $6.65 per share in

James C. Mahan
U.S. District Judge

2020. Defendants contend this price decrease was due to unforeseen challenges in the market while the plaintiff class asserts it was a result of the falsity of defendants' statements coming to light.

Samples of allegations include: PlayAGS and/or other defendants arbitrarily and fraudulently inflating its sales metrics and growth projections by a factor of four when reporting to Wall Street (ECF No. 60 at 8); reporting sales in quarters in which they did not occur (*Id.* at 9); and failing to disclose costs and risks of an acquisition (*Id.* at 10). In sum, the plaintiff class asserts unlawful statements concerning "unsupported and unstainable growth measures, sales manipulation, and problematic [] acquisition" led to inflated IPO and SPO prices and ultimately the downfall of the stock price harming the plaintiff class. (*Id.* at 11).

The plaintiff class asserts defendants David Lopez and Kimo Akiona ("executive defendants"), and PlayAGS (collectively "PlayAGS defendants") violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder ("claim 1"). Further, the plaintiff class asserts defendants Apollo Global Management, LLC; Apollo Gaming Holdings, LP; Apollo Investment Fund, LP; and AP Gaming VoteCo, LLC ("Apollo defendants"), and the executive defendants, violated Section 20(a) of the Exchange Act ("claim 2").

Regarding the Securities Act, the plaintiff class avers Section 11 was violated by the underwriter defendants;[1] PlayAGS; the executive defendants; and David Sambur, Daniel Cohen, Eric Press, Yvette Landau, Adam Chibib, and Geoff Freeman ("director defendants") (together with the executive defendants, the "individual defendants") ("claim 3"). Plaintiff further contends Section 12(a)(2) was violated by all defendants ("claim 4"), and Section 15 was violated by the individual defendants and Apollo defendants ("claim 5").

The underwriter defendants move to dismiss the second amended complaint, joined by the AGS defendants and Apollo defendants. (ECF No. 69). The AGS defendants also move to

---

[1] The "underwriter defendants" consist of Credit Suisse Securities (USA), LLC; Deutsche Bank Securities, Inc.; Jeffries, LLC; Macquarie Capital (USA), Inc.; Merrill Lynch; Pierce, Fenner, & Smith, Inc.; Citigroup Global Markets, Inc.; Stifel, Nicolaus, & Company, Inc.; SunTrust Robinson Humphrey, Inc.; Nomura Securities International, Inc.; Rother Capital Partners, LLC; Union Gaming Securities, LLC; Williams Capital Group, LP; Apollo Global Securities, LLC; and Morgan Stanley & Co.

**James C. Mahan**
**U.S. District Judge**

1  dismiss the second amended complaint, joined by the underwriter defendants and Apollo
2  defendants.[2] (ECF No. 70). The Apollo defendants also move to dismiss the second amended
3  complaint. (ECF No. 71).

4  **II.    LEGAL STANDARD**

5  A court may dismiss a complaint for "failure to state a claim upon which relief can be
6  granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain
7  statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell*
8  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed
9  factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of
10 the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation
11 omitted).

12 In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply
13 when considering motions to dismiss. First, the court must accept as true all well-pled factual
14 allegations in the complaint; however, legal conclusions are not entitled to the assumption of
15 truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by
16 conclusory statements, do not suffice. *Id.* at 678.

17 Second, the court must consider whether the factual allegations in the complaint allege a
18 plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint
19 alleges facts that allow the court to draw a reasonable inference that the defendant is liable for
20 the alleged misconduct. *Id.* at 678.

21 . . .
22 . . .
23 . . .
24 . . .
25 . . .
26 . . .

---

28 [2] The Apollo defendants join the motion in its entirety, and the underwriter defendants join only §§ III.A–C.

**James C. Mahan**
**U.S. District Judge**

- 3 -

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

Allegations of fraud, however, are subject to a heightened pleading standard and must be stated with particularity. Fed. R. Civ. P. 9(b). Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Rule 9(b) operates "to give defendants notice of the particular misconduct which is alleged," requiring plaintiffs to identify "the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations. . .. The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (citations omitted).

Moreover, the Private Securities Litigation Reform Act of 1995 ("PSLRA") also raises the pleading standard for private securities fraud plaintiffs. "[A] private securities plaintiff proceeding under the PSLRA must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999) (superseded by statute on other grounds).

**III.  DISCUSSION**

    **a. Heightened Pleading Standard**

The plaintiff class's allegations sound in fraud. (*See* ECF No. 60). The Exchange Act claims are subject to a heightened pleading standard pursuant to the PSLRA. *See* 15 U.S.C. § 78u-4(b)(1)(B). Moreover, the entirety of the complaint alleges a "unified course of fraudulent conduct" in which defendants made false statements and misrepresentations to artificially inflate the price of PlayAGS shares prior to SPOs. (*Id.*). Thus, the Securities Act claims are subject to

James C. Mahan
U.S. District Judge

- 4 -

the Rule 9(b) pleading standard. *See Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009). Further, the Ninth Circuit specifically requires "an explanation as to why the disputed statement was untrue or misleading *when made*. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994) (superseded by statute on other grounds) (emphasis in original).

### b. Underwriter Defendants' Motion to Dismiss

The underwriter defendants move to dismiss claim 3: violation of Section 11 of the Securities Act. (ECF No. 69). The underwriter defendants additionally move to dismiss the plaintiff class's claim 4: violation of Section 12(a)(2) of the Securities Act. (*Id.*).

#### i. Standing – March 2019 SPO

As an initial matter, the underwriter defendants assert lead plaintiff—and thus the plaintiff class—lacks standing to bring claims alleging violations of Sections 11 and 12 of the Securities Act regarding the March 2019 SPO. (*Id.*). In support, the underwriter defendants assert lead plaintiff's last purchase of AGS shares was seven months prior to the March 2019 SPO, and further contend a lead plaintiff does not have standing to challenge a public offering in which it did not purchase a security. (*Id.*). Lead plaintiff, alternatively, asserts that even if it did not purchase shares in the March 2019 SPO, it purchased shares in the August 2018 SPO, and both SPOs relied on nearly identical shelf registration statements and resulted in the same type of injury. (ECF No. 79). Thus, lead plaintiff contends it has standing on behalf of other class members who did purchase shares in the March 2019 SPO because of the similarity of the alleged wrongdoing and harm. (*Id.*).

The sides present competing case law, but the dispute boils down to what type of standing is at issue here. The underwriter defendants suggest statutory standing is at issue (ECF Nos. 71, 85) while lead plaintiff provides case law concerning Constitutional standing (ECF No. 79). The court finds statutory standing is the appropriate standard as the underwriter defendants moved to dismiss claims pursuant to Rule 12(b)(6). *See In re Century Aluminum Co. Sec. Litig.*,

**James C. Mahan**
**U.S. District Judge**

- 5 -

729 F.3d 1104, 1109 ("[F]ailure to allege statutory standing results in failure to state a claim on which relief can be granted, not the absence of subject matter jurisdiction."); (ECF No. 71).[3]

To adequately allege statutory standing, plaintiffs can (1) "prove they purchased their shares directly in the secondary offering itself," or (2) "prove that [its] shares, although purchased in the aftermarket, can be traced back to the secondary offering." *Id.* at 1106 (citing *Joseph v. Wiles*, 223 F.3d 1155, 1159 (10th Cir. 2000) (abrogated on other grounds)).

Here, lead plaintiff's last purchase of AGS shares was seven months prior to the March 2019 SPO, and the complaint contains no allegations tying any of its shares to the March SPO. (ECF No. 60). Thus, lead plaintiff does not have statutory standing to bring claims of violations of Section 11 or Section 12 of the Securities Act concerning the March 2019 SPO.

The underwriter defendants' motion to dismiss (ECF No. 69)—to which the AGS defendants and Apollo defendants have joined—is GRANTED as to all defendants concerning the March 2019 SPO because lead plaintiff does not have statutory standing.

*ii. The underwriter defendants are not statutory sellers*

To find liability under Section 12(a)(2) of the securities act, the defendant must be a "statutory seller" defined by 15 U.S.C. § 77l(a)(2). ("A person who offers or sells a security…by means of a prospectus or oral communication…shall be liable…to the person purchasing such security from him."). The term "purchase" is not defined by the Securities Act but has been interpreted to be "a correlative to both 'sell' and 'offer,' at least to the extent that the latter entails active solicitation of an offer to buy." *Pinter v. Dahl*, 486 U.S. 622, 645 (1988).

Here, each allegation concerning underwriter defendants "selling" or "offering" AGS shares is vague and conclusory. Both parties refer to paragraphs 33, 46–59, 399, and 408 of the complaint as relevant to whether the underwriter defendants actually sold, offered, or solicited purchase of shares to the plaintiffs. (ECF Nos. 69, 79, 85). Notably, all these paragraphs are in the "PARTIES" or "CLAIMS FOR RELIEF UNDER THE SECURITIES ACT" sections of the

---

[3] In its opposition and argument for Constitutional standing, lead plaintiff suggests standing is, at least in part, a class certification issue. (ECF No. 79). The merits of this contention are irrelevant here as Constitutional standing is not at issue.

complaint. (ECF No. 60). Paragraph 33 simply describes lead plaintiff and alleges it purchased shares from underwriter defendant Deutsche Bank Securities Inc. in the August 2018 SPO. (ECF No. 60). Paragraphs 46–59 merely state who each underwriter defendant is and blanketly assert each "help[ed] to draft and disseminated the Shelf Registration Statement and solicit investors to purchase the PlayAGS stock issued pursuant thereto." (*Id.*). Paragraphs 399 and 408 are conclusory statements of law. (*See id.*). Such vague and conclusory allegations do not meet the heightened Rule 9(b) pleading standard and thus do not need to be taken as true. Fed. R. Civ. P. 9(b); *see Neubronner*, 6 F.3d at 671; *In re Silicon Graphics*, 183 F.3d at 974.

Lead plaintiff also points to paragraphs 315–20, which contain allegations regarding the nature of the underwriter defendants' relationship with PlayAGS and role in the SPOs.[4] (ECF Nos. 60, 79). None of these, however, allege with specificity any sale or offer to the plaintiff class. (*See* ECF No. 60). Even taking the most specific allegation regarding an underwriter defendant selling shares to lead plaintiff—paragraph 33—and considering it in context with paragraphs 315–320, the complaint falls short of establishing underwriter defendants as statutory sellers. *See In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *19 (N.D. Cal. Oct. 31, 2014) (holding that without allegations active or direct solicitation, communication, or negotiation between plaintiffs and the alleged statutory seller, the pleadings were insufficient to establish underwriters as statutory sellers).

The underwriter defendants' motion to dismiss (ECF No. 69)—to which the AGS defendants and Apollo defendants have joined—is GRANTED as to the underwriter defendants as the allegations are insufficient to establish them as statutory sellers.

    **c. AGS Defendants' Motion to Dismiss**

The AGS defendants seek to dismiss the entire complaint. (ECF No. 70). The plaintiff class asserts claims 1 and 4 against the AGS defendants, claim 2 against the executive defendants, and claim 3 against PlayAGS. (ECF No. 60). As an initial matter, the court

---

[4] Specifically, they allege the underwriter defendants' direct participation in creating and filing with the SEC the Shelf Registration Statement. (SAC ¶¶ 319–320).

James C. Mahan
U.S. District Judge

- 7 -

reiterates lead plaintiff does not have standing to bring claims 3 or 4 as they pertain to the March 2019 SPO.

### i. Confidential Witnesses

Many of the allegations in the complaint are derived from confidential witnesses ("CWs"). (*See* ECF No. 60). The AGS defendants argue that most, if not all, allegations based on CW assertions should not be considered at this stage of pleading. (ECF No. 70).

CWs must be "described 'with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009) (citing *In re Duao Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1015 (9th Cir. 2005)). Facts must demonstrate that a CW would have been "personally knowledgeable of the information alleged" given their position. *Id.* at 996. When alleging scienter, CW allegations of unreliable hearsay and conclusory assertions of scienter are unreliable. *Id.*

The court first addresses whether each CW would have been "personally knowledgeable of the information alleged" given their position. *See id.*

CW-1 is a former vice president of game development and worked at PlayAGS from June 2015 through January 2018. (ECF No. 60). CW-1's allegations discuss financial goals of PlayAGS, its success—or lack thereof—in Oklahoma, and post-January 2018-IPO sales goals. (*Id.*). It seems unlikely that someone in game development, albeit in a high-up role, would be "personally knowledgeable" about such specific details of sales. Without more, allegations of CW-1 are insufficiently pled. *See Zucco Partners*, 552 F.3d at 995.

CW-2 is a former director of slot products and worked for PlayAGS from September 2015 until February 2017. (ECF No. 60). CW-2 "was responsible for product management, placing units, and forecasting earnings." (*Id.*). CW-2's allegations concern communication with a former director of sales and unrealistic forecasted growth going into the January 2018 IPO. (*Id.*). The similarity between the allegations and CW-2's responsibilities demonstrate that CW-2 was in a position to be "personally knowledgeable of the information alleged." *See Zucco Partners*, 552 F.3d at 995.

CW-3 is a former information systems manager and worked for PlayAGS "prior to the class period" but allegedly bore witness to practices "in late 2017 and early 2018" and was tasked with "creating synergy" between Cadillac Jack and PlayAGS during the 2015 acquisition. (ECF No. 60). CW-3's allegations concern PlayAGS pressuring salespeople and firing those who "pushed back" as well as Cadillac Jack's alleged price-inflating practices. (*Id.*). It seems unlikely that someone in information systems management would be "personally knowledgeable" about the culture of the sales team at PlayAGS. *See Zucco Partners*, 552 F.3d at 995. Further, though tasked with "creating synergy," it seems unlikely that someone in information systems management would be "personally knowledgeable" about executive financial decisions and practices of a target company. *See id.* Without more, CW-3 is insufficiently pled. *See id.*

CW-4 is a former PlayAGS employee. (ECF No. 60). CW-4 worked at Cadillac Jack until it was acquired by PlayAGS in 2015, then at PlayAGS until August 2018. (*Id.*). The complaint states CW-4 was "in the reporting line that reported to the Chief Technology Officer, who reported to Defendant Lopez. (*Id.*). "CW-4 participated in meetings with his reporting line throughout the 2017 to 2018 time period where the Oklahoma market was discussed." (*Id.*). Allegations concern difficulty placing certain games in Oklahoma and lack of certain actions to resolve the issue. (*Id.*). The similarity between the allegations and CW-4's position and activities within PlayAGS demonstrate that CW-4 was in a position to be "personally knowledgeable of the information alleged." *See Zucco Partners*, 552 F.3d at 995.

CW-5 is a former senior financial analyst who worked for PlayAGS from April 2016 to June 2019. (ECF No. 60). He attended financial meetings regarding sales and cost cutting. (*Id.*). His allegations concern these meetings and general financial and sales practices of PlayAGS. (*Id.*). The similarity between the allegations and CW-5's position and activities within PlayAGS demonstrate that CW-5 was in a position to be "personally knowledgeable of the information alleged." *See Zucco Partners*, 552 F.3d at 995.

CW-6 is a former member of the finance team who worked for PlayAGS during the class period and was responsible for business analytics, forecasting, and budgeting. (ECF No. 60).

CW-6's allegations concern sales practices with clients and selling pieces of Integrity. (*Id.*). It seems unlikely that a non-executive member of the finance team would be "personally knowledgeable" about negotiations with clients, though CW-6 is likely "personally knowledgeable" about selling pieces of a previously acquired company. *See Zucco Partners*, 552 F.3d at 995. CW-6 is insufficiently pled regarding allegations of client negotiations, but sufficiently pled regarding allegations of selling parts of the company. *See id.*

CW-7 is a former manager of gaming operations who worked at PlayAGS from May 2017 through October 2019. (ECF No. 60). CW-7 conducted market research ahead of the Integrity acquisition. (*Id.*). CW-7's allegations concern findings pursuant to the market research as well as insider information on a contract negotiation with Chickasaw Nation, where PlayAGS had electronic gaming machines located. (*Id.*). Given that CW-7 personally performed the research giving rise to his allegations, CW-7 was in a position to be "personally knowledgeable of the information alleged" regarding the Integrity acquisition. *See Zucco Partners*, 552 F.3d at 995. Further, due to his involvement with other entities generally, CW-7 likely also was "personally knowledgeable" about negotiations with Chickasaw Nation. *See id.*

CWs-8 and -9 were never employed at PlayAGS. (ECF No. 60). It is unlikely that non-employees would be knowledgeable about PlayAGS's business decisions given they would not be in a position to be privy to internal corporate knowledge. *See Zucco Partners*, 552 F.3d at 995. Thus, CWs-8 and -9 are insufficiently pled. *See id.*

CW-10, like CW-4, previously worked for Cadillac Jack then at PlayAGS "in an engineering capacity" until October 2019 after the acquisition. (ECF No. 60). CW-10's allegations concern details of revenue models and pricing arrangements with casinos as well as requisite maintenance and upkeep of the gaming machines. (*Id.*). It seems unlikely that an employee who simply worked "in an engineering capacity" would be "personally knowledgeable" about revenue models and pricing arrangements with casinos, though CW-10 is likely "personally knowledgeable" about maintenance and upkeep issues of the gaming macines. *See Zucco Partners*, 552 F.3d at 995. CW-10 is insufficiently pled regarding business dealings, but sufficiently pled regarding maintenance of machines. *See id.*

James C. Mahan
U.S. District Judge

CW-11 is a former senior employee in sales, who was employed with PlayAGS "from before the class period until shortly before August 2019" SPO.[5] (ECF No. 60). CW-11's allegations concern pressure on improving revenue and sales, in part from the Apollo defendants. (*Id.*). The court recognizes CW-11's request and need for anonymity. However, a "senior employee in sales," without more detail, is insufficient to establish whether CW-11 is "personally knowledgeable" about financial practices and executive-level pressure from third parties. *See Zucco Partners*, 552 F.3d at 995. This is especially so because the specific timing of employment cannot be discerned. *See id.*; (ECF No. 60). Thus, CW-11 is insufficiently pled. *See Zucco Partners*, 552 F.3d at 995.

CW-12 was a director of gaming operations for PlayAGS from November 2013 to February 2019. (ECF No. 60). CW-12's responsibilities including managing large projects and acquisitions in this role. (*Id.*). CW-12 then worked as an account executive until August 2019 and reported to senior vice president of slot products, Andrew Burke, who reported to defendant Lopez. (*Id.*). CW-12 was also sent to Oklahoma to assess the Integrity acquisition. (*Id.*). CW-12's allegations concern misrepresentations of growth to investors and Integrity's overvaluation. (*Id.*). The similarity between the allegations and CW-12's position and responsibilities within PlayAGS demonstrate that CW-12 was in a position to be "personally knowledgeable of the information alleged." *See Zucco Partners*, 552 F.3d at 995.

In sum, allegations of CWs-1, -3, -8, -9, and -11 are insufficiently pled. Thus, allegations sourced from these CWs do not have to be accepted by the court as true. *See id.* at 999. CWs-6 and -10 are likewise insufficiently pled as to allegations of client negotiations and business dealings, respectively. CWs-2, -4, -5, -7, and -12 are sufficiently pled.

       *ii. Executive Defendants*

The plaintiff class asserts claims 1, 2, and 4 against the executive defendants. To support claims 1 and 2, the pleadings must include materially false or misleading statements and allege scienter with a high degree of particularity. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta,*

---

[5] There are two SPOs at issue: August 2018 and March 2019. The court is unclear on which this refers to.

**James C. Mahan**
**U.S. District Judge**

*Inc.*, 552 U.S. 148, 157 (2008). To support claim 4, the pleadings must establish defendants were statutory sellers of the shares at issue and that plaintiff relied on materially false and misleading statements when purchasing the shares. 15 U.S.C. § 77l(a)(2). *Omnicare* has clarified that the author of the statements must not believe the contents thereof when published to constitute "false or misleading." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188–89 (2015). Here, the complaint does not allege the requisite scienter or contemporaneous falsity required nor that the executive defendants were statutory sellers.

All supporting factual allegations in the complaint point to already-existing poor market conditions or declining sales in advance of the SPOs when positive statements saying the opposite were published. (ECF No. 60). However, each of these statements were based on record sales in audited financial statements. There is no allegation that shows the executive defendants had any reason to believe otherwise. (*Id.*). Moreover, the executive defendants did not directly sell or solicit purchase of shares of PlayAGS. Indeed, both the executive defendants purchased shares of AGS and did not sell them, further indicating their belief of positive performance of PlayAGS.

Thus, because allegations fail to show the executive defendants did not believe statements that turned out to be false or misleading, and because there are no allegations to establish executive defendants as statutory sellers, the AGS defendants' motion as to claims 1, 2, and 4, against the executive defendants is GRANTED.

### *iii. PlayAGS*

The plaintiff class brings claims 1, 3, and 4 against PlayAGS. Like the executive defendants, there are no allegations establishing PlayAGS ever selling or soliciting purchase of AGS shares. (*See generally* ECF No. 60). Moreover, there are no allegations of scienter to support PlayAGS intentionally publishing misrepresentations or false statements. (*Id.*). Indeed, the complaint lacks factual allegations that demonstrate the statements were false at the time, let alone that defendants did not believe them. (*Id.*). Thus, the complaint does not reach the heightened pleading standards required for claims 1 and 4.

**James C. Mahan**
**U.S. District Judge**

1    Lead plaintiff contends PlayAGS failed to disclose the necessary risks in its SPO
2 materials, but the prospectus supplement before the court directly contradicts this. (*See* ECF
3 Nos. 60, 70). Risks of the Integrity acquisition and moving into the Oklahoma market—which
4 were a significant factor in the downfall of the stock price—were adequately disclosed. (ECF
5 No. 60). Lead plaintiff contends the risks were misidentified as "potential" risks when they had
6 already materialized, but the complaint does not allege sufficient factual allegations to support
7 this assertion. (*Id.*)

8    Thus, the complaint fails as to claims 1, 3, and 4 against PlayAGS and the AGS
9 defendants' motion to dismiss with respect to these claims is GRANTED.

### d. Apollo Defendants' Motion to Dismiss

#### i. The Apollo defendants are not statutory sellers

12   The parties dispute whether the Apollo defendants are established as statutory sellers
13 pursuant to § 12(a)(2) in the complaint. *Pinter* instructs a defendant that (1) "passed title, or
14 other interest in the security, to the buyer for value," or (2) successfully solicited the purchase of
15 the security "motivated at least in part by a desire to serve his own financial interests." 486 U.S.
16 at 642, 647. The Ninth Circuit has clarified that "a plaintiff must allege that the defendants did
17 more than simply urge another to purchase a security." *In re Daou Sys., Inc.*, 411 F.3d 1006,
18 1029 (9th Cir. 2005). "The plaintiff must show that the defendants solicited purchase of the
19 securities for their own financial gain." *Id.*

20   The requisite showing is not present here. As an initial matter, the complaint contains no
21 allegations of any Apollo defendants passing title to any member of the plaintiff class. (*See* ECF
22 No. 60). Secondly, there are no allegations that allege any direct communications between the
23 Apollo defendants and any member of the plaintiff class. (*See id.*). Without more, the
24 solicitation prong cannot be satisfied. *See Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011
25 WL 4389689, at *10 (C.D. Cal. May 5, 2011) (noting that a complaint "must include very
26 specific allegations of solicitation, including direct communication[s]" to avoid dismissal).
27 Thus, the complaint does not establish the Apollo defendants as statutory sellers.

28   . . .

**James C. Mahan**
**U.S. District Judge**

- 13 -

The Apollo defendants' motion to dismiss is thus GRANTED with respect to claim 4.

### ii. Primary Liability

The Apollo defendants further move to dismiss claims 2 and 5—alleged violations of § 20(a) of the Exchange Act and § 15 of the Securities Act—on the grounds that there is no primary liability and thus there cannot be control person liability. (ECF No. 71). "To establish a cause of action under § 20(a), a plaintiff must first prove a primary violation of underlying federal securities laws." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014). Likewise, "violation of § 15 is predicated upon violation of § 11 or § 12." *In re Harmonic Inc. Sec. Litig.*, 163 F. Supp. 2d 1079, 1085 (N.D. Cal. 2001).

Because the Apollo defendants are not established as statutory sellers by the complaint, there is no primary liability to predicate claims 2 and 5. Thus, they must be dismissed with claim 3 regarding the Apollo defendants. Lead plaintiff points to paragraphs 269–87, and 414–22 for allegations of the Apollo defendants' control other defendants in this action. (ECF No. 80). However, even assuming *arguendo* this is true, it does not affect this court's finding that the complaint fails to establish the Apollo defendants as statutory sellers and thus fails to establish primary liability for claims 2 and 5.

### e. Scheme Liability Claim

Defendants dispute whether the plaintiff class brings an independent scheme liability claim. However, this claim is clear from the complaint's face. Claim 1 is specifically entitled "Violation of Section 10(b) of the Exchange Act *and Rule 10b-5 Promulgated Thereunder* Against PlayAGS and the Executive Defendants." (ECF No. 60 (emphasis added)). No motion presently before the court properly addresses this claim. The AGS defendants' motion to dismiss contends the complaint does not cite "Rule 10b-5(a) or (c)," which is the legal basis for scheme liability, but this nuance does not indicate there is no claim for scheme liability when Rule 10b-5 was specifically mentioned. (*See* ECF No. 60). Nonetheless, they move to dismiss the complaint in its entirety. The AGS defendants' motion to dismiss as to scheme liability is DENIED.

. . .

**James C. Mahan**
**U.S. District Judge**

- 14 -

### f. Leave to Amend

Lead plaintiff requests leave to amend the complaint should any claims be dismissed. Despite the complaint having been amended twice already, the court recognizes this is the first it has been substantively challenged. Thus, leave to amend is GRANTED.

## IV. CONCLUSION

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the defendants' motions to dismiss are GRANTED in part and DENIED in part consistent with the foregoing.

IT IS FURTHER ORDERED the plaintiff class is GRANTED leave to file an amended complaint within 30 days of this order.

DATED December 2, 2022.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 15 -