1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

IN RE AGS, INC. SECURITIES LITIGATION,

Case No. 2:20-CV-1209 JCM (NJK)

ORDER

Presently before the court is a motion for judgment on the pleadings by defendants PlayAGS, Inc.; David Lopez; Kimo Akiona; David Sambur; Daniel Cohen; Eric Press; Yvette Landau; Adam Chibib; and Geoff Freeman (collectively, the "AGS defendants"). (ECF No. 99). Lead plaintiff the Oklahoma Police Pension and Retirement System filed a response (ECF No. 110), to which the AGS defendants replied (ECF No. 118). For the reasons stated below, the court GRANTS the AGS defendants' motion.

I.      **Background**

This is a putative consolidated class action suit alleging various violations of the Securities Exchange Act of 1934 and the Securities Act of 1933. Lead plaintiff represents the class of plaintiffs that purchased PlayAGS, Inc. stock between January 26, 2018, and March 4, 2020 (the "class period"). (ECF No. 60, at 7). The second amended complaint names over 20 defendants, including PlayAGS, Inc. (ECF No. 60).

PlayAGS, Inc. supplies electronic gaming devices and other products for the gaming industry. (*Id.*, at 21). The thrust of the allegations in the second amended complaint ("SAC") is that PlayAGS, Inc. (and various underwriters, executives, and directors named as additional defendants) fraudulently inflated its share prices via misrepresentations and omissions of the company's true financial condition. (*See generally id.*). The class period begins on the date of

**James C. Mahan**
**U.S. District Judge**

1   PlayAGS, Inc.'s initial public offering and ends on the date lead plaintiff alleges that PlayAGS's

2   "true" financial condition became known to the plaintiffs.  (*Id.* at 31).

3         The SAC alleges five causes of action against the defendants: violations of (1) Section

4   10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder[1]; (2) Section 20(a) of

5   the Exchange Act[2]; (3) Section 11 of the Securities Act[3]; (4) Section 12(a)(2) of the Securities

6   Act[4]; and (5) Section 15 of the Securities Act[5].  The court found that claim one was insufficiently

7   pleaded as a cause of action under subsection (b) of Rule 10b-5 and dismissed it on that basis.

8   (ECF No. 95, at 12–13).  The court dismissed the other claims for various reasons (lack of

9   standing, insufficiently pleaded allegations, statutory insufficiency, etc.).

10        Finding that the parties had not adequately briefed whether claim one survived as a cause

11  of action under the *other* subsections of Rule 10b-5, the court reserved judgment on that issue.

12  (*Id.* at 14).  The court granted lead plaintiff 30 days to amend its SAC.  (*Id.* at 15).  Lead plaintiff

13  never amended its SAC.

14        As the only remaining defendants, the AGS defendants now ask the court to grant

15  judgment in their favor on the pleadings.  (ECF No. 99).  They argue that claim one also fails to

16  state of cause of action for relief under the other subsections of Rule 10b-5, and this entire action

17  should be dismissed with prejudice.  (*Id.*, at 6-7).

18  _____

19      [1] Against defendants PlayAGS, Inc.; David Lopez; Kimo Akiona; David Sambur; Daniel
20  Cohen; Eric Press; Yvette Landau; Adam Chibib; and Geoff Freeman.  (ECF No. 60, at 82).

21      [2] Against defendants PlayAGS, Inc.; David Lopez; Kimo Akiona; David Sambur; Daniel
    Cohen; Eric Press; Yvette Landau; Adam Chibib; and Geoff Freeman.  (ECF No. 60, at 82).

22      [3] Against defendants PlayAGS, Iinc.; David Lopez; Kimo Akiona; David Sambur; Daniel
23  Cohen; Eric Press; Yvette Landau; Adam Chibib; Geoff Freeman; Credit Suisse Securities
    (USA) LLC; Citigroup Global Markets Inc. Deutsche Bank Securities Inc.; Jefferies LLC;
24  Macquarie Capital (USA) Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Stifel,
    Nicolaus & Company Inc.; SunTrust Robinson Humphrey, Inc.; Nomura Securities International,
25  Inc.; Roth Capital Partners, LLC; Union Gaming Securities LLC; The Williams Capital Group,
    L.P.; Apollo Global Securities, LLC; and Morgan Stanley & Co. LLC.

26      [4] Against all defendants named in the complaint.

27      [5] Against defendants David Lopez; Kimo Akiona; David Sambur; Daniel Cohen; Eric
28  Press; Yvette Landau; Adam Chibib; Geoff Freeman; Appollo Global Management, LLC;
    Apollo Gaming Holdings, L.P.; Apollo Investment Fund VIII, L.P.; and AP Gaming VoteCo,
    LLC.

**James C. Mahan**
**U.S. District Judge**

## II.        This motion is proper.

Lead plaintiff argues that the AGS defendants' Rule 12(c) motion for judgment on the pleadings is improper because this court already considered and denied their request to dismiss claim one under the other subsections of Rule 10b-5.  (ECF No. 110, at 18).  Accordingly, AGS defendants' motion is actually one for reconsideration improperly disguised as one under Rule 12(c).  (*Id.*).  Lead plaintiff further argues that a judgment on the pleadings is appropriate only when no dispute of material fact exists, and as AGS defendants' answer disputes all material facts alleged in the complaint, judgment is not proper.  (*Id.* at 17).

AGS defendants counter that lead plaintiff mischaracterizes the court's prior order and the legal standard for a Rule 12(c) motion.  (ECF No. 118, at 7).  This court never addressed the merits of claim one under the other subsections of Rule 10b-5.  (*Id.* at 7–8).  And—defendants may raise a 12(c) motion attacking the sufficiency of a claim even after filing an answer.  (*Id.*).  The court agrees with the AGS defendants.

Lead plaintiff's first claim is styled "Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder."  (ECF No. 60, at 82).  Lead plaintiff does not specify under which subsections of Rule 10b-5 it is attempting to bring claim one.  Based on the allegations under claim one, the court found that claim one could *either* be construed as a cause of action under subsection (b) of Rule 10b-5 (a "misrepresentation" claim) *or* as a cause of action under subsections (a) and (c) (a "scheme liability" claim).  (ECF No.95, at 14).

Based on the parties' prior motions, the court dismissed claim one as insufficiently pleaded if construed as a misrepresentation claim.  The court's prior order did not rule on whether claim one survived when construed as a cause of action under scheme liability, finding the issue insufficiently briefed.  Contrary to lead plaintiff's contention, the court never addressed whether claim one sufficiently pleaded scheme liability.  The AGS defendants' motion for judgment on the pleadings is therefore not an improper motion for reconsideration.

**James C. Mahan**
**U.S. District Judge**

As for lead plaintiff's argument that a 12(c) motion for failure-to-state-a-claim is improper once an answer disputing the material allegations in the complaint has been filed[6]—this is a plain misunderstanding of the function of a 12(c) motion. First, the plain text of Federal Rule of Civil Procedure 12(h)(2) instructs that a failure-to-state-a-claim defense may be raised by a Rule 12(c) motion. This defense is also explicitly excluded from the list of defenses that are waived if not raised by an earlier 12(b) motion or responsive pleading. FED. R. CIV. P. 12(h)(1).

Second, while a *plaintiff's* 12(c) motion would be barred by a defendant's answer that denies all material factual allegations in the complaint, the same logic does not apply to a *defendant's* 12(c) motion for failure-to-state-a-claim. Under the legal standard for a 12(c) motion, all well-pled allegations in the complaint are taken as true, along with the *nonmoving* party's factual allegations. *MacDonald*, 457 F.3d at 1081. The logic here is clear—if, even after taking all its allegations as true, the plaintiff has not sufficiently pleaded a claim for relief, then judgment on the pleadings must be granted in favor of the defendant. A defendant's dispute of fact cannot cure an inherently deficient complaint.[7]

Thus, the "principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing." *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Rules 12(c) and 12(h) extend the life of a failure-to-state-a-claim defense after the filing of an answer. A court may dismiss a claim for being insufficiently pleaded at any time before trial. Accordingly, for the reasons explained above, the court finds that the AGS defendants' 12(c) motion for failure to state a claim is procedurally proper.

**III.   Claim one is insufficiently pleaded as a scheme liability cause of action.**

Turning to the merits of AGS defendants' motion for judgment on the pleadings, they argue that judgment is proper on the only remaining claim—claim one under SEC Rule 10b-5. Although the court dismissed claim one as insufficiently pleaded as a misrepresentation cause of

---

[6] Lead plaintiff argues that the AGS defendants' answer "bars judgment on the pleadings because it disputes every fact and asserts 49 affirmative defenses." (ECF No. 110, at 17).

[7] Lead plaintiff's argument is plainly illogical when considered this way. Lead plaintiff is essentially arguing that even if a plaintiff insufficiently pleads, for example, one element of its cause of action, a 12(c) motion can be defeated because the defendants created a dispute of fact as to the other elements.

James C. Mahan
U.S. District Judge

1  action, it did not rule on whether it is also sufficiently pleaded as a scheme liability cause of

2  action.  The court now finds that it is not sufficiently pleaded as to scheme liability.

3      A.    Legal Standard

4          Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) are

5  "functionally identical" to motions to dismiss for failure to state a claim under Rule 12(b)(6).

6  *Dworkin*, 867 F.2d at 1192.  This is because, under both rules, "a court must determine whether

7  the facts alleged in the complaint, taken as true, entitle the plaintiff to legal remedy."  *Chavez v.*

8  *U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citations omitted).  In other words, a district court

9  may dismiss a claim under Rule 12(c) for being insufficiently pled.

10          In reviewing a Rule 12(c) motion, the court "must accept all [well-pled] factual

11  allegations in the complaint as true and construe them in the light most favorable to the non-

12  moving party."  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  The nonmoving party's

13  allegations must be accepted as true while any of the moving party's allegations that have been

14  denied or contradicted are assumed to be false.  *MacDonald*, 457 F.3d at 1081.

15          When reviewing the legal sufficiency of a claim under *Twombly* and *Iqbal*, legal

16  conclusions are not entitled to an assumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

17  (2009).  After disregarding legal conclusions and bald assertions, the court must consider

18  whether the remaining well-pled factual allegations state a plausible claim for relief.  *Id.* at 679.

19  A claim is facially plausible when the court can draw a reasonable inference that the defendant is

20  liable for the alleged misconduct.  *Id.* at 678.  When the allegations have not crossed the line

21  from conceivable to plausible, the claim must be dismissed for being insufficiently pled.  *Bell*

22  *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Starr v. Baca*, 652 F.3d 1202, 1216

23  (9th Cir. 2011).

24      B.    Discussion.

25          Section 10(b) of the Exchange Act prohibits the use of manipulative and deceptive

26  devices through a national securities exchange—it is the Exchange Act's general antifraud

27  provision.  15 U.S.C. § 78j(b).  Rule 10b-5 implements Section 10(b) by broadly outlawing

28  fraudulent practices.  Rule 10b-5 specifies three types of proscribed activities in various

James C. Mahan
U.S. District Judge

- 5 -

1    subsections: "(1) the employment of any device, scheme, or artifice to defraud; (2) the making of

2    any untrue statement or the omission of any statement of material fact; or (3) the engaging in any

3    act, practice, or course of business that does or would operate as fraud or deceit."  69A Am. Jur.

4    2d *Securities Regulation—Federal* § 1307 (2024) (citing 17 C.F.R. § 240.10b-5).

5        Courts have dubbed the first type of proscribed activity brought under subsections (a) and

6    (c), "scheme liability."  *E.g.*, *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 709 (9th Cir. 2021).

7    The second type of proscribed activity (making material misrepresentations or omissions) is

8    generally brought under subsection (b) of Rule 10b-5 and has different elements than a claim for

9    scheme liability.  *Compare Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank*

10   *A/S*, 11 F.4th 90, 105 (2d Cir. 2021)[8] (scheme liability) *with Matrixx Initiatives, Inc. v.*

11   *Siracusano*, 563 U.S. 27, 38 (2011)[9] (material misrepresentations or omissions).

12       Lead plaintiff's first cause of action is alleged under Rule 10b-5 without specifying

13   which subsections the defendants allegedly violated.  (ECF No. 60, at 82).  Lead plaintiff does

14   not plead separate causes of action for its different theories of liability under Rule 10b-5.  (*See*

15   *id*.).   As explained earlier, based upon the parties' prior motions and arguments, the court

16   dismissed claim one under a misrepresentation theory of liability.  The court found that lead

17   plaintiff failed to sufficiently allege the scienter required for fraudulent conduct under the

18   applicable heightened pleading requirements for fraud.  (ECF No. 95, at 11–12).

19       Defendants now argue for judgment on the pleadings as to the scheme liability theory

20   because scienter as to fraudulent conduct is a required element here as well.  (ECF No. 99, at 16–

21   18).  Lead plaintiff counters that the heightened pleading standards applied to misrepresentation

22   claims do not apply to scheme liability claims, and therefore its first cause of action can survive

23   _____

24       [8] The elements for scheme liability are: "(1) that the defendant committed a deceptive or

25   manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4)
     reliance."  *Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90,
     105 (2d Cir. 2021).

26

27       [9] The elements for a claim of material misrepresentation or omissions are: "(1) a material

28   misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the
     misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the
     misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Matrixx Initiatives,*
     *Inc. v. Siracusano*, 563 U.S. 27, 38–38 (2011) (citations omitted).

James C. Mahan
U.S. District Judge

- 6 -

as a scheme liability claim.  (ECF No. 25, at 33).  Lead plaintiff also appears to argue that its first claim survives as a scheme liability cause of action because it is pleaded "independent of [the] misrepresentation" claim.  (ECF No. 110, at 25).  The court finds lead plaintiff's arguments unpersuasive.

The court must first dispose of lead plaintiff's contention that different pleading standards apply to claims brought under different subsections of Rule 10b-5.  *All* claims brought under Rule 10b-5 are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act.  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020).  The court is not aware of any binding authority—and lead plaintiff provides none—which applies different pleading requirements to different subsections of the Rule.

Turning to lead plaintiff's second argument; in *Lorenzo*, the Supreme Court explained that considerable overlap exists amongst the various subsections of Rule 10b-5.  *Lorenzo v. Sec. & Exch. Comm'n*, 139 S. Ct. 1094, 1101–02 (2019).  The subsections do not govern mutually exclusive spheres of conduct but rather proscribe fraudulent and deceptive practices in general *and* specific terms.  *Id.*  Each subsection is "meant to cover additional kinds of illegalities—not to narrow the reach of the prior sections." *Id.* (citations omitted).  Specific conduct might qualify both as a "material misrepresentation or omission" (subsection (b)) *and* as a "deceptive or manipulative act" (subsection (c)).  *See id.*  The various subsections thus merely describe *subsets* of a broader category—fraud.

The court finds that the difference between a scheme liability claim (subsections (a) and (c)) versus a misrepresentation claim (subsection (b)) is thus *not* that they proscribe mutually exclusive types of fraudulent conduct with different scienter requirements.  Rather, the difference is that the former type of claim involves fraudulent conduct made "in furtherance" of a scheme while the latter doesn't involve a scheme.  If defendants commit fraud as part of a scheme, they may be liable under *both* types of claims.[10]  Logically then, if a plaintiff's scheme liability claim is based on the same alleged set of facts as its misrepresentation claim, and the court finds that

---

[10] In other words, a subsection (b) claim is included within a subsection (a) and (c) claim.

1   those facts do not sufficiently allege fraud (with the requisite scienter) to sustain the
2   misrepresentation claim, the scheme liability claim necessarily fails.

3       Contrary to lead plaintiff's contention that its scheme liability claim is somehow
4   independent of its misrepresentation claim, lead plaintiff pleaded only a single cause of action
5   under rule 10b-5.  That cause of action can *either* be construed as a misrepresentation claim *or* a
6   scheme liability claim.  The same set of alleged facts form the basis of fraud under both theories
7   of liability.  It is therefore irrelevant whether lead plaintiff sufficiently pleaded the existence of a
8   scheme if it did not also sufficiently plead the existence of an underlying fraud.

9       Lead plaintiff alleges that the AGS defendants "developed and engaged in a scheme to
10  manipulate the price of PlayAGS common stock" by disseminating "materially false and
11  misleading" information and concealing "adverse material information."  (ECF No. 60, at 82–
12  83).  The court found, in its prior order, that lead plaintiff failed to sufficiently allege that the
13  AGS defendants intentionally or knowingly made false or misleading statements.  (ECF No. 95,
14  at 11–12).  The court also found that lead plaintiff did not sufficiently allege the inadequacy of
15  the defendants' disclosures.  (*Id.*).

16      Based on the court's prior order, lead plaintiff's first cause of action fails to state claim
17  under *either* theory of liability.  It is irrelevant whether lead plaintiff sufficiently alleged a
18  scheme to "manipulate the price of PlayAGS common stock" under the second element of
19  scheme liability because the court has already found that it did not sufficiently allege a
20  "deceptive or manipulative act" under the first element.  Lead plaintiff fails to state a claim for
21  relief under claim one, and judgment is ordered in favor of the AGS defendants.

22  **IV.    The court dismisses this action with prejudice.**

23      AGS defendants ask this court to dismiss this entire action, with prejudice.  (ECF No. 99,
24  at 6).  Lead plaintiff requests leave to amend the complaint.  (ECF No. 110, at 21 n. 16).  The
25  court reminds lead plaintiff that it has amended the complaint twice already and chose not to
26  amend for a third time, even after the court gave it leave to do so.  (ECF Nos. 49, 60).  The court
27  denies lead plaintiff's request and dismisses this action, with prejudice.

28

**James C. Mahan**
**U.S. District Judge**

1       A district court has inherent, *sua sponte* authority to "dismiss a plaintiff's action *with*
2   *prejudice* because of [the plaintiff's] failure to prosecute…." *Link v. Wabash R. Co.*, 370 U.S.
3   626, 629–631 (1962) (emphasis added).  "The power to invoke this sanction is necessary in order
4   to prevent undue delays in the disposition of pending cases and to avoid congestion in the
5   calendars of the District Courts." *Id.* at 630.  A district court may enter such a dismissal
6   "without affording notice of its intention to do so or providing an adversary hearing before
7   acting." *Id.* at 632.  Trial courts have found a plaintiff's failure to amend its complaint by a
8   court-ordered deadline evidence of a lack of prosecution.  *See Pagtalunan v. Galaza*, 291 F.3d
9   639, 643 (9th Cir. 2002) (affirming a district court's order dismissing a petition for failure to
10  prosecute after the petitioner failed to file an amended petition as ordered).[11]

11      But before dismissing an action for failure to prosecute, the court must weigh five
12  factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to
13  manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less
14  drastic alternatives; and (5) the public policy favoring disposition of cases on their merits."
15  *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002).  Here, all factors weigh in favor of
16  dismissal.

17      The first three factors (the public's interest in expeditious resolution of litigation, the
18  court's need to manage its docket, and the risk of prejudice to the defendant) favor dismissal.
19  Despite having amended the complaint twice already, the court still granted lead plaintiff leave
20  to amend for a third time when it ruled on the defendants' prior motions to dismiss.  But lead
21  plaintiff chose not to avail itself of that opportunity and never filed a third amended complaint.
22  (ECF No. 95, at 15).

23      "Unreasonable delay is the foundation upon which a court may presume prejudice.*"*
24  *Southwest Marine Inc. v. Danzig*, 217 F.3d 1128, 1138 (9th Cir. 2000).  The defendants in this

---

26      [11] *Quarles v. Sniff*, No. EDCV 16-1234-MWF (JDE), 2017 WL 11634976, at *2 (C.D.
    Cal. Apr. 14, 2017) (report and recommendation adopted by order) (dismissing for failure to
27  amend complaint by deadline);  *Diaz v. Cal. Dep't of Corr.*, No. CV 20-2351-GW (PVC), 2021
    WL 1587923, at *4 (C.D. Cal. Mar. 9, 2021) (report and recommendation adopted by order)
28  (dismissing for failure to amend complaint by deadline).

case have already been prejudiced by lead plaintiff's delay and will continue to be prejudiced if lead plaintiff is given leave to amend its complaint for a *fourth* time.  This is a putative class action with dozens of defendants—the prejudice in this case (and waste of court resources) is magnified.

The fourth factor (the availability of less drastic alternatives) weighs in favor of dismissal because "less drastic alternative" measures have already been utilized by the court.  The court has already attempted to avoid outright dismissal by granting lead plaintiff leave to amend.  Lead plaintiff not only failed to amend but has provided the court with zero explanation for its failure to do so.  Lead plaintiff has exhausted the court's "less drastic" alternatives.

The fifth factor (the public policy favoring disposition of cases on their merits) further counsels dismissal.  Several of the claims in the SAC were dismissed for lack of standing.  Lead plaintiff was also instructed, by the court's prior order, of the precise ways in which its *other* claims were insufficiently pleaded.  Despite being given instruction—and having ample opportunity—on how to cure the defects in its SAC and proceed with prosecuting the merits of its case, lead plaintiff chose not to do so.  The court must dismiss this entire action, with prejudice.

**V.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the AGS defendants' motion for judgment on the pleadings (ECF No. 99) be, and the same hereby is, GRANTED.

This entire action is dismissed with prejudice. The clerk of the court is instructed to close the case.

DATED February 12, 2024.

UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 10 -